*52 TORRUELLA, Circuit Judge,
Concurring.
I join the majority because the deferential standard of review compels that we affirm Derek Sivo’s conviction, but write separately to stress how near to the boundary this case falls.
The evidence, when viewed in the light most favorable to the prosecution, showed that J.J.’s injury required a high degree of force — far in excess of the defendant’s suggested cause — and that it was suffered while in the care of the defendant. The prosecution, however, offered no explanation as to how or why J.J.’s injury took place,[3] other than to generally attribute the injury to the defendant. On this decidedly sparse basis a jury returned a conviction, which was then in turn upheld by the Rhode Island Supreme Court. See State v. Sivo, 925 A.2d 901 (R.I.2007).
Although circumstantial evidence can be sufficient to sustain a conviction, O’Laughlin v. O’Brien, 568 F.3d 287, 302 (1st Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 1142, 175 L.Ed.2d 991 (2010), it must still meet some constitutional baselines. A conviction will survive habeas review if “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).
We accept, as we must, the assessment (by the prosecution’s experts) of the approximate time as of which J.J. suffered his injury, and, consequently, that the injury took place while in the sole care of the defendant.[4] However, this evidence is not sufficient, by itself, to sustain Sivo’s conviction, since one of the elements of the crime in question requires that the defendant “knowingly or intentionally” inflict serious bodily injury. R.I. Gen. Laws § 11-9-5.3(b)(1) (2002). Therefore, only in conjunction with the finding that the injury was knowing or intentional can the prosecution’s evidence suffice. Dr. Duncan and Dr. Asser testified to this effect, opining that the injury was “non-accidental.” Sivo, 925 A.2d at 907-08. How they were able to reach such a conclusion from merely observing a subdural hematoma is at least one of the circumstances that causes me to have concerns regarding the outcome we must approve. Be that as it may, this was apparently valid opinion evidence, which was rebutted by defendant’s expert and ultimately believed by the jury. Hence the question becomes whether the jury can convict a defendant — of knowingly or intentionally inflicting serious bodily injury to a child- — on the basis that the defendant had sole access to the child when the latter suffered an injury that, according to the prosecution’s expert witnesses, could not have been accidental.
The criminal justice system must allow for some inferences in order to properly function, but courts must endeavor to ascertain the point at which a reasonable inference becomes overly speculative. This case poses such a quandary. Although we must draw all reasonable inferences in favor of the prosecution, “a reviewing court must refrain from giving credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly *53 speculative.” Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir.2009) (internal quotations omitted). Some level of intellectual rigor beyond bald acceptance of state court findings is required. Id. We approached a similar issue in O’Laughlin, overturning a denial of a habeas petition where the prosecution’s case relied primarily on the defendant’s mere presence near the scene of the crime. O’Laughlin, 568 F.3d at 302. While the instant case may have a superficial congruency to O’Laughlin, there remains a crucial distinction. Whereas in O’Latighlin there were numerous individuals with access to the victim, Sivo had sole custody of J.J. during the critical period. Hence, Sivo’s conviction resulted not from the rank speculation found in O’Laughlin, but from a reasonable inference that the only individual capable of inflicting the injury did in fact do so, a criminal res ipsa loquitur. The line separating permissible inferences from groundless speculation defies clarity, but it lies somewhere between the instant case and O’Laughlin.
In the present case, a rational jury could find Derek Sivo guilty beyond a reasonable doubt, if it believed the government’s circumstantial case. That said, although I concur with the majority, I wish to stress how scant the evidence against Sivo was. The prosecution’s medical testimony was barely sufficient to sustain the conviction. If anything, the prosecution’s doctors disproved the defendant’s suggested explanation for J.J.’s injury, but failed to provide a more specific cause than “acceleration and deceleration of the brain like that caused by a car accident or a fall from a height of several stories.” Sivo, 925 A.2d at 908. There was no history of child abuse or outward signs of the cause of J.J.’s brain injury and the prosecution could offer no explanation for why or how Sivo purportedly administered the injury, even though such an injury allegedly required the force of a car accident, severely limiting the possible causes. Id. at 907-08. Further, Dr. Duncan testified that typically there is a visible mark on the scalp of a child who suffers a subdural hematoma, yet none of the three doctors who examined J.J. saw one. Id. at 907. In addition, it is debatable how the prosecution’s expert witnesses could have opined with confidence that J.J.’s injury was “non-accidental,” where they admitted to not being able to ascertain how or where it occurred and where the possible explanations provided by such experts (e.g., a car accident or a fall from height) are situations that may also ostensibly occur accidentally.
The prosecution’s construction of the pertinent time line was also suspect. J.J.’s mother was able to communicate with him after the alleged blow (e.g., J.J. responded “Hi, Mommy” when Kim cheeked on him after returning from work on November 1), see Sivo v. Wall, 2010 U.S. Dist. LEXIS 65045, *13-14, 2010 WL 2636024, *4 (D.R.I. June 28, 2010), in direct contradiction to Dr. Asser’s testimony that, immediately following the injury, J.J. would not have responded if someone talked to him or moved him, and would have been moaning, see Sivo, 925 A.2d at 908.
The aforementioned inconsistencies, compounded by the generally meager offering of proof, should have given the jury pause. Instead, the jury convicted and put a man in jail on a showing of evidence that flirts with the fringes of permissibility, even under Jackson’s limited review.
Though I believe this case to be exceedingly close, given the limited review which is available to this court, I have no choice but to concur in affirming this outcome. I do so, however, with extreme reluctance. I would not have convicted Derek Sivo, but the jury was within its rights, if ever so barely.

. Dr. Duncan testified that he did not see any marks on J.J.’s body evidencing the cause of his injury and that he could not say where or . how J.J.’s injury occurred, but could pinpoint the approximate time of J.J.'s two brain injuries. State v. Sivo, 925 A.2d 901, 907 (R.I. 2007).

. Dr. Duncan testified that a blow, sufficiently powerful to leave a subdural hematoma, would have left J.J. in such a state that his mother would have noticed before she left. See Sivo, 925 A.2d at 907.